IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANNETTE ZERBY, | ) | CASE NO. 1:13cv1405 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Annette Zerby ("Plaintiff" or "Zerby") challenges the final decision of Defendant, Carolyn M. Colvin, Acting Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income ("SSI") under Title XVI of the Social Security Act . Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 14.

As discussed below, the decision by the Administrative Law Judge ("ALJ") that Zerby is capable of performing three jobs that exist in significant numbers in the national economy is not supported by substantial evidence because the Vocational Expert ("VE") on whose testimony the ALJ relied was uncertain as to the meaning of a visual skills limitation included by the ALJ in his hypothetical question. Indeed, the VE testified that none of the three jobs would be available if one of the possible interpretations of the visual skills limitation applied.[1] Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Although the ALJ provided some alternative potential visual skills limitations during the hearing, he ultimately returned to and adopted in his Residual Functional Capacity ("RFC") determination the same initial visual skills limitation that the VE testified he did not know how to interpret.

1

## I.  Procedural History

Zerby protectively filed[2] her application for SSI on October 1, 2010, alleging a disability onset date of October 15, 2009.  Tr. 177.  She alleged disability based on stroke, seizure, back pain, back spasms, high blood pressure, limited right arm use, and limited eyesight.  Tr. 188. After denials by the state agency initially (Tr. 84-96, 111) and on reconsideration (Tr. 97-110, 122), Zerby requested an administrative hearing.  Tr. 76-79, 133-135.   A hearing was held before ALJ Patrick J. Rhoa on January 20, 2012.  Tr. 22-69.  In his April 30, 2012, decision (Tr. 7-21), the ALJ determined that Zerby's age, education, work experience, and residual functional capacity ("RFC") did not prevent her from performing work existing in significant numbers in the national economy, i.e., she was not disabled.  Tr. 16.  Zerby requested review of the ALJ's decision by the Appeals Council. Tr. 158.  On May 1, 2013, the Appeals Council denied Zerby's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.

## II. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

---

[2] Protective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement. Protective filing dates may allow an individual to have an earlier application date than the actual signed application date. This is important because protective filing often affects the entitlement date for disability and retirement beneficiaries along with their dependents.
http://www.ssdrc.com/disabilityquestionsmain20.html (Last visited 8/05/14).

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[3] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy.  *Id.*

---

[3] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

3

### III. The ALJ's Decision

In his April 30, 2012, decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since October 1, 2010, the application date. Tr. 12.

2. The claimant has the following severe impairments: degenerative disc disease of lumbar spine, chronic obstructive pulmonary disease (COPD), hypertension, chronic kidney disease, and status post cerebrovascular accident x 2 (CVA). Tr. 12

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[4] Tr. 12.

4. The claimant has the residual functional capacity to perform sedentary work with a sit/stand option every hour; she cannot perform work requiring fine visual skills; can perform occasional climbing of ramps and stairs, never climbing ladders, ropes, or scaffolds; no work around hazards including no work around unprotected heights or dangerous machinery; occasional right overhead lifting and occasional right overhead reaching; must avoid concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas; must avoid extreme heat, extreme cold and concentrated humidity; she is limited to simple and more complex tasks in an environment with routine changes in the work routine and she would be off task 5% in an eight hour work day. Tr. 13.

5. The claimant is unable to perform any past relevant work. Tr. 15.

6. The claimant was born [in 1967] and was 43 years old, which is defined as a younger individual, age 18-49,[5] on the date the application was filed. Tr. 16.

7. The claimant has a limited education and is able to communicate in English. Tr. 16.

---

[4] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

[5] The ALJ's hearing decision contains a typo listing younger individual as a person age 45-49. However, pursuant to the social security regulations a younger individual is someone between age 18-49. The regulations note that persons age 45–49 are more limited in their ability to adjust to other work than persons who have not attained age 45. 20 C.F.R. § 416.963

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  Tr. 16.

9. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 16.

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 1, 2010, the date the application was filed.  Tr. 17.

## IV. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A. The ALJ's determination that Zerby can perform work as a charge account clerk, a food and beverage clerk, and a cashier is not supported by substantial evidence**

Zerby argues that the Commissioner's decision requires remand because the record does not support a finding that Zerby is capable of performing a significant number of jobs in the national economy.  Doc. 16, pp. 14-15.  The ALJ relied on VE testimony to conclude that Zerby

5

could perform work as a charge account clerk, a food and beverage order clerk, and a cashier. Tr. 16.  However, Zerby contends that it was improper for the ALJ to rely on the VE's testimony in this regard because, when questioned by Zerby's attorney whether those occupations could meet one of the limitations adopted in the RFC, i.e., that "she cannot perform work requiring fine visual skills," the VE testified that those three jobs would be eliminated.  Doc. 16, pp. 14-15.

Vocational Expert Gene Burkhammer testified at the hearing.  Tr. 59-67.  The ALJ asked the VE to consider a hypothetical individual of Zerby's age, education, and past work experience who can perform sedentary work with a sit-to-stand option every hour; cannot perform work that involves fine visual skills; no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; no exposure to hazards, meaning no work around unprotected heights or dangerous machinery; occasional right hand overhead lifting; occasional right overhand reaching; avoid concentrated exposure to irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; avoid extreme heat, cold, and concentrated humidity; who can perform simple and more complex tasks in an environment with routine changes and who would be off-task five percent of the time.  Tr. 61.  The VE testified that such an individual could not perform Zerby's past work but could perform work as a charge account clerk (jobs:  300 local; 3,000 Ohio; 90,000 national), a food and beverage order clerk (jobs:  300 local; 4,000 Ohio; 90,000 national), and a cashier (jobs:  500 local; 6,000 in Ohio; 120,000 national).  Tr. 62.   The ALJ ultimately adopted an RFC with all of the limitations set forth in the hypothetical described above and found that Zerby could perform job existing in significant numbers in the national economy (citing the three jobs listed by the VE) based on the VE's testimony.  Tr. 13.

When Zerby's attorney was given the opportunity to question the VE, the following exchange occurred concerning how the vision limitation ("cannot perform work that involves fine visual skills") was to be interpreted and the impact on available jobs:

> Attorney: …how did you interpret the Judge's limitation no fine visual skills?
>
> VE: Oh, I interpret that as a lot of reading, of you know, documents, more than an occasional basis.
>
> Attorney: So you're interpreting them on the time that's required, rather than the actual --
>
> VE: No, if it's [sic] paper documents with a lot of print, that would apply as well.  Computer reviewing and keyboarding, I don't think would be affected.
>
> Attorney: So you're saying if it's on the computer, the fine visual skills are okay?  You can do it, but if it's on paper, you can't do it?
>
> VE: Yes.
>
> Attorney: So the *charge account clerk,* they don't require any paperwork?
>
> VE: Oh, there's definitely paperwork, yes.
>
> Attorney: So that would eliminate that job, then?
>
> VE: I mean, a lot of that job is interviewing and taking information and recording it on a computer or sometimes on paper, through a personal interview or receiving applications by mail and then filing those applications.  So there's a considerable amount of viewing documents.
>
> Attorney: So someone who didn't have fine visual skills would not be able to do that job?
>
> VE: It would be difficulty [sic], yes.
>
> Attorney: Okay.  And what about *food and beverage order clerk*, isn't that very similar as far as they need to be accurate on what they -- their orders?
>
> VE: Yeah, but it doesn't include fine -- that one would not be impacted by that limitation.  A lot of it is taking phone orders or written information and transferring that to a kitchen or similar environment.

| | | |
|---|---|---|
| Attorney: | | So how does that not involve fine visual skills? |
| VE: | | You're doing more writing than reading in that particular job. |
| Attorney: | | And what about the *cashier*…that also involves some fine visual skills? |
| VE: | | The problem I have with that limitation is it's well, let me just see what the information says.  See, it's the categories aren't broken down as fine visual skills.  It's near acuity, far acuity, those things would apply.  And, for example, that if I used the criteria and transferred near acuity to fine visual skills for *charge account clerk*, it's occasional.  And I'm not sure if that is necessarily limiting to that limitation when it's done occasionally. |
| Attorney: | | Well, if it's not – none, if it's no fine visual skills, so -- |
| VE: | | If there's no fine visual skills, yeah, that would eliminate that job. |
| Attorney: | | Okay.  And it would eliminate all of these jobs, then? |
| VE: | | **If that limitation transfers, again, to near acuity, it would eliminate the food and beverage order clerk job as well.  And I'm sure it would also the cashier.  Yes.** |

Tr. 62-65 (emphasis added).

The ALJ then questioned the VE again and modified the vision limitation by asking, "Just changing the first hypothetical and taking out the no fine visual skills limitation and replace that with occasional, where a hypothetical person can only perform occasional close or near, intricate visual work.  Can this hypothetical person perform any of [Zerby]'s past work?"  Tr. 65.  The VE testified that the hypothetical individual could not perform Zerby's past work but could perform the charge account clerk job.  Tr. 65.  The ALJ then asked if he changed "occasional" to "frequent close or intricate work" what jobs would be available.  Tr. 66.  The VE testified as follows:

> …With frequent…It would add the food and beverage order clerk job…the cashier job could still be done as well…[and] a charge account clerk.

8

Tr. 67.  The ALJ then asked "So the charge account clerk would remain, the food and beverage order clerk would remain and the cashier would remain?"  Id.  The VE replied, "Yes."

Zerby argues that it was improper for the ALJ to rely on the VE's testimony that she could perform work as an account clerk, food and beverage order clerk, and cashier because the ALJ ultimately adopted in the RFC the limitation in the first hypothetical, i.e., that Zerby "cannot perform work requiring fine visual skills."  Doc. 16, pp. 14-15.  Zerby contends that the ALJ "completely ignored [the VE's] later testimony in which he conceded that these jobs could not be performed by an individual who could not perform work requiring fine visual skills."  Doc. 16, p. 15.

The Commissioner first argues that Zerby did not provide sufficient proof of a disabling visual impairment.  Doc. 17, pp. 8-9.  The Commissioner reviews the medical evidence to show that Zerby did not prove a disabling visual impairment.  Id. at p. 9.  However, the Commissioner's first argument is irrelevant because the ALJ accepted for purposes of the RFC that Zerby could not perform work requiring fine visual skills.  Tr. 13.

Next, the Commissioner argues that the ALJ clarified at the hearing that Zerby's "occasional close or near" visual acuity did not preclude performance of the three enumerated jobs.  Doc. 17, p. 10.  However, the Commissioner's assertion is without merit for two reasons.  First, the ALJ made clear that his follow up question to the VE was not a clarification of the first hypothetical because the ALJ asked the VE to "*chang[e]* the first hypothetical and *tak[e] out* the no fine visual skills limitation and *replace* that with occasional…"[6]  Tr. 65 (emphasis added).  Moreover, the ALJ ultimately adopted in the RFC the language used in the first hypothetical, i.e., that the person "cannot perform work requiring fine visual skills."  This is the wording that the

---

[6] The ALJ later asked to replace the occasional in the hypothetical with frequent.  Tr. 66.

VE testified would preclude all three jobs if it were interpreted as "near acuity." Second, the RFC did not limited Zerby to "occasional" close or near visual acuity as the Commissioner suggests.[7] The RFC specifically states that Zerby cannot perform any "work involving fine visual skills." Tr. 13.

The VE's testimony clearly shows that he was uncertain as to the interpretation of the no fine visual skills limitation. Although the VE initially stated that he interpreted this limitation as to require reading documents on more than an occasional basis, his later testimony indicated that, if the limitation were interpreted as near acuity, all enumerated jobs would be eliminated. Tr. 63-65. The ALJ never provided further clarification with regard to the no fine visual skills limitation even after the VE's testimony showed that the VE was unclear as to how the limitation should be interpreted. "A [VE]'s response to a flawed hypothetical question cannot serve as substantial evidence sufficient to uphold an ALJ's denial of disability insurance benefits." *Vincent v. Comm'r of Soc. Sec.*, CIV.A. 11-10476, 2012 WL 573630 at *5 (E.D. Mich. Jan. 31, 2012) *report and recommendation adopted sub nom. Vincent v. Astrue*, 11-CV-10476, 2012 WL 579735 (E.D. Mich. Feb. 22, 2012) (*citing Yoder v. Commissioner of Social Sec.,* Case No. 10–14941, 2011 WL 6308313 *6 (E.D.Mich., Dec.16, 2011)). Similarly, substantial evidence does not support an ALJ's decision to deny disability benefits where the VE's testimony is unclear. *Barker v. Astrue*, 5:09 CV 1171, 2010 WL 2710520 (N.D. Ohio July 7, 2010) (remanding case due to lack of substantial evidence where VE's testimony was unclear); *D'Angelo v. Comm'r of*

---

[7] There is also a contradiction in the VE's testimony. When the VE was asked about the effect of changing the first hypothetical by taking out the no fine visual skills and replacing it with a limitation of occasional close or near intricate visual work, the VE testified that only the charge account clerk job would be available. Tr. 65. However, when asked to change the limitation to frequent close or near intricate visual work, the VE testified that all three enumerated jobs would remain. Tr. 67. This testimony is logically inconsistent. If Zerby cannot perform two of the three jobs with only occasional close or near intricate work, how could she do all three jobs when close or near intricate work is frequent? Social security regulations define occasional: as "occurring from very little up to one-third of the time" and define frequent as "occurring from one-third to two-thirds of the time." *Mager v. Comm'r of Soc. Sec.*, 145 F.3d 1332 (6th Cir. 1998); S.S.R. 83-10 (1983); 20 C.F.R. §§ 404 1567(a)-(b) (1997).

*Soc. Sec.*, 475 F. Supp. 2d 716, 724 (W.D. Mich. 2007) (finding remand necessary because VE's testimony was unclear).  On the record, it must be concluded that substantial evidence does not exist to support the ALJ's determination that there are a significant number of jobs in the national economy Zerby can perform with the RFC assigned by the ALJ.   Accordingly, the case is remanded to the Commissioner so that the visual skills limitation and its effect on available jobs can be clarified with further articulation by the ALJ and/or further VE testimony.

### B.  Additional argument relating to Zerby's complaints of fatigue

Zerby also argues that the ALJ failed to account in the RFC for her complaints of fatigue.  Doc. 16, p. 13.   This opinion does not address Zerby's additional argument because, on remand, the ALJ's evaluation of the VE's visual impairment testimony may impact his findings with respect to the RFC and the questions posed by to the VE.  *See Trent v. Astrue*, Case No. 1:09CV2680, 2011 U.S. Dist. LEXIS 23331, at *19 (declining to address the plaintiff's remaining assertion of error because remand was already required and, on remand, the ALJ's application of the treating physician rule might impact his findings under the sequential disability evaluation).

### V.  Conclusion

For the reasons set forth herein, the Court **REVERSES AND REMANDS** the Commissioner's decision for further proceedings consistent with this Opinion and Order.[8]

Dated:  August 13, 2014

Kathleen B. Burke
United States Magistrate Judge

---

[8] This opinion should not be construed as requiring a determination on remand that Zerby is disabled.